# PARENT AND CHILD.

[Hancock Circuit Court, December Term, 1899.]

Norris, J.

## APPLICATION OF WILLIAM B. COONS FOR A WRIT OF HABEAS CORPUS.

1. MOTHERS RIGHT TO CUSTODY OF CHILD CANNOT BE WILLED. WHEN.

    An order made by the court of common pleas in a divorce proceeding giving control of the minor child to the mother until the further order of that court. is a continuing order; and as between the parties to it retains the child in the arms of the law, but does not confer such authority upon the mother as empowers her, by her last will, to appoint a guardian for the child under Sec. 6266, Rev. Stat., or relating to cases where the father is dead or gone to parts unknown.

2. RIGHTS OF THE FATHER NOT EXTINGUISHED.

    An order of the character named does not extinguish but merely holds the father's right in abeyance, and, for the cause apparent to the court, makes the mother's right to the custody of the child superior to the father's right to its custody.

3. RIGHTS OF FATHER AS TO THIRD PARTIES DETERMINED ON HABEAS CORPUS.

    As between the father and one whose right does not arise out of the order, he is not compelled to seek modification of such order in the court that made it, but may invoke the writ of *habeas corpus* and submit his claim to the court from which the writ issues.

4. CHILD'S WELFARE THE CHIEF CONSIDERATION.

    In a controversy as to the custody of the child, the paramount object which governs the court is the benefit to the child, and all rights must yield to that consideration.

5. FATHERS RIGHT TO CUSTODY SUPERIOR.

    But when all else is equal, and no present reason exists for departure from the rule, the right of the father to the custody of his minor child is superior to that of any other person.

AT CHAMBERS. On writ of Habeas corpus, issued by the Circuit Court of Hancock county.

NORRIS, J.

Marjorie Coons, a child about seven years old, is the daughter of the relator, William V. Coons, and his wife, Ada Coons, now deceased. The respondent, Mary L. Reigle, is the mother of Ada Coons and the grandmother of the child Marjorie.

On may 19, 1894, Ada Coons, by the decree of the court of common pleas of this county, was, because of the aggressions of her husband, adjudged to be divorced from the relator, and in the same decree she was awarded the care, custody and control of said child, Marjorie, and relator was enjoined from interfering with said custody and control until the further order of that court. The mother and child thereafter became members of the family of respondent and so remained up to April —, 1898, when Ada Coons, the mother of Marjorie, died. Since the death of its mother the child has remained, and still is in the custody and under the care of its grandmother, the respondent, who, relator says, restrains said child without authority, and by force deprives relator of its possession. As the child's father, he claims its custody and control and the possession of its person, and seeks his remedy by *habeas corpus*.

Of the writ due return is made. Respondent brings the child into court, and makes answer that she has care of said child, her grandchild, and denies that she unlawfully keeps the child; she denies that relator has legal or moral right to have its custody, and pleads the decree in divorce, and that the custody was awarded to the wife, her daughter, and alleges that at the time of the decree the child was abandoned by its father, who became a stranger to it : That the child is delicate and afflicted with curvature of the spine, and has been so afflicted since it became a member of her family : That from that time to this she has cared for it and ministered to its wants and necessities and that under her care, and the proper and sufficient treatment which she has afforded, and still affords it, the child is rapidly approaching entire recovery : That relator and his relatives are strangers to the child, and that to take her from her present home and place her with those with whom she is not acquainted will retard her recovery and not be to her benefit.

It is pleaded in the answer, that this court has no jurisdiction to determine the custody of the child. That the court of common pleas retains jurisdiction, that its award of said custody to the mother, being a continuing order, the modification of it must be sought in the court that made it.

The reply denies abandonment of the child, and denies that to change its custodian and its present abode will endanger its life or retard its recovery. These issues were submitted with the evidence.

It appears beyond any doubt that relator and respondent are each of them eminently proper persons to have the custody of this child, and that in the control of either she would receive every care which her necessities might require or her condition suggest. So that the question of fitness or unfitness of either of the parties does not arise in this controversy. It is urged that the right of relator to the custody of this child is a right that was adjudicated by the decree in the divorce proceeding in the court of common pleas; that having determined as between the husband and wife, and having awarded the custody to the wife, the order as to the child is continuing and vital; and that the rights of relator are by it held suspended in that court, and can only be rehabili-

tated by the modification of that order: That the position of the wife under that order was such as to enable her to name a testamentary guardian; and having done this, and chosen respondent as such guardian, by her last will, the custody of the mother passed unabated to respondent by that instrument. And that such being the case, the rights of these parties to the custody of this child are not a subject of inquiry in a proceeding of this character in this court.

One lawfully entitled to the custody of another, of which custody he is unlawfully deprived, may prosecute a writ of *habeas corpus* to inquire into the cause of such deprivation. So, if this court may have jurisdiction of the controversy, the rights of the parties can be fully adjudicated in this proceeding. That the mother of this child did, by her last will, in writing, name and appoint the respondent the guardian, is not a reason that the father should be denied its custody. The situation contemplated by sec. 6266, Rev. Stat., which provides for the appointment of a guardian of a minor child by will, is not present in the case at bar. The father is not dead, nor gone to parts unknown. If abandonment of the child by the father could be read into the section, as a condition under which the testamentary appointment could be made, the evidence does not verify the claim that the child was or has been forsaken, renounced or rejected by him. He does not appear to have voluntarily yielded control, even to the mother. The inter-position of the court of common pleas and its order was required to compel him to relinquish his custody; and this proceeding would negative the assertion that he refuses its custody and care. So that the will of Ada Coons, the mother, purporting to make respondent the guardian of this child, carries with it no weight in this inquiry and does not create testamentary guardianship. The very fact that the order made by the court of common pleas, as to the custody of the child, is a continuing order, retaining the child in the arms of the law as between the parties to that divorce proceeding, makes untenable the proposition that the decree thus awarding custody conferred authority upon the mother that might be cast by will. However that court may have dealt with the rights of the husband, her rights under that decree in so far as concerns this child, died with her.

And this now brings us to the consideration of the decree of the court of common pleas awarding the custody of the child to the mother, "until the further order of this court," says the decree, and the potency and effect of that decree when applied to the rights of the parties here. Whatever may have been its vitality, and however it may have concluded the parties to it as a continuing order, reserving in the court that made it the power to recall it, to set it aside, or to modify it and make other disposition of the person of this little girl—what relation do these parties bear to it; how far does it conclude them, or either of them, in this proceeding.

Ada Coons, the mother of this child, and plaintiff in the action for divorce in which the decree was made giving to her its custody, is dead; relator was the defendant against whom the order was made. The respondent in this proceeding was not a party to that case; her rights were not created by that decree, nor by authority springing from it, and if she has rights, they are not concluded by it. The effect of that decree was not to extinguish the rights of the father, but only to make them subservient to the rights of the mother. That order disposed of the custody of the child only as between the parties to that suit; and the

mother's right to its custody was made by order of that court superior to the father's right to its custody.

Conditions have arisen when the welfare of the child required it, and the reported cases are many, where, by action of the court, the rights of a parent, or of both parents, cease to exist, and the parent is made an alien to the offspring; but such was not the office of that adjudication, and aside from it, relator is still clothed with all the legal authority and legal rights of a father.

It is urged that the court of common pleas is the forum to which relator must resort, and by modification of the order there made, seek custody of his child. Against whom must he seek its modification? Against the plaintiff to that action in whose favor it was made? No, the plaintiff is dead. Against any party to it? No, there is no party to it. Against one whose rights arise under it, or by it, or through it, to the custody of this child? No, there are none such, and no such rights eminate from it. Why should he be required to seek modification of that order when, as against him whose rights were not extinguished by it, the claim of nobody arises from it or subsists under it?

There exists no reason why he may not, without resorting to the modification of that order, invoke the jurisdiction of any court authorized to issue the writ of *habeas corpus*, and there test the legality of his claim to the custody of his child as against one who is a stranger to that proceeding and that decree.

By the provisions of sec. 6264, of the statutes of this state, the father, if a suitable person, shall have the custody, control and education of his minor children. This is the general rule which yields to the welfare of the child. As announced by Justice Ashburn in Clark v. Bayer, 32 Ohio St., 299. As a general rule the parents are entitled to the custody of their minor children. When the parents are living apart, the father is, *prima facie*, entitled to that custody, and, when he is a suitable person, able and willing to support and care for them, his right is paramount to that of all other persons, except that of the mother in cases where the infant child is of such tender years as to require her personal care; but in all cases of controverted right to custody the welfare of the minor child is first to be considered."

In any event, the welfare of the child is the primary consideration, and everything must yield to it. In the action between relator and his wife in which custody was awarded to the wife it does not appear to have been so awarded because his rights were forfeited by relinquishment or by abandonment, or that he was not a suitable person to properly discharge the responsibility of its care; but because the welfare of the child demanded that its mother be the custodian; and so his rights were by the order of the court suspended and held in abeyance to her control. When she died, and the decree so far as her rights were concerned had served its purpose, nothing then stood between him and his child, and the right to custody of his child except the welfare of the child itself.

From the evidence in this case the child's welfare, its life and health and safety, is as assured in the hands of one of these parties as it is in that of the other. The child will receive the best of treatments and instruction wherever it goes as between the parties in this case. Either of those who are here contending for its custody are most worthy of its control.

It surely cannot be for the benefit of this little girl that she continue a stranger to her father, whose right to her custody is superior to that of

any other person. It surely cannot be to her interest and happiness that her father's people, who are among the best in this community, should remain unknown to her. At the same time I appreciate the worth of her mother's parents, who now control her, and their affectionate care of her, and her love and attachment to them. And since the hearing of this case, while my time has been fully occupied with other official duties, yet I might have hastened the decision of this case had it not been that I hoped that the bitterness which surely exists between the parties to this case might be in a measure laid aside when they came to consider the feeling of this little girl, and that there might by a measurable reconciliation, and by their voluntary act render it possible, without the harsh interposition of the law, that this little one have, at her pleasure, access to the homes of each, as she surely and permanently has to the hearts of each, and I still have hopes that this condition may be brought about.

While the law gives the custody of this child to the father, yet the transfer must be made in a manner that will least excite and grieve her; neither must the parents of the mother be cut off from her.

The care, custody and control of this child is awarded to the relator, the father, the same to commence on the first day of May next, and thereafter to continue until the further order of the circuit oourt of this county. In the meantime every facility must be given the child to become better acquainted with its father, and opportunity that its affection may go out to him, and that she be apprised and prepared as well as may be for this change of custodians. There must be given to respondent Mary L. Reigle, and to Francis Reigle, her husband, the grandmother and the grandfather of this child, opportunities to visit her at suitable times, and ample opportunity to the child to visit them frequently, and at seasons deemed reasonable and proper, and this also until the further order of the circuit court of this county. And the costs of this case are adjudged against the relator.

*J. F. Axline* and *Ross & Kinder*, for relator.

*John Poe* and *G. F. Pendleton*, for respondent.